(No. 75-CV-61-)

IN RE APPLICATION OF JAMES S. POCKROSS.

*Opinion filed April 8, 1976.*

JAMES S. POCKROSS, Pro Se.

WILLIAM J. SCOTT, Attorney General of Illinois; PAUL WEST, Assistant Attorney General.

PER CURIAM.

This claim arises out of a criminal offense which occurred on January 15, 1974, at 814 West Webster, Chicago. Claimant, James S. Pockross, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, (Ill.Rev.Stat., 1973, Ch. 70, Sec. 70, 71, et seq.) (hereafter referred to as the "Act").

An order was entered by the Court on July 15, 1975, dismissing the claim and upon Claimant's moving for a hearing in accordance with Section 9 of the Act, a hearing was granted.

The facts are undisputed. On January 15, 1974, the Claimant took a break from his job at Metro Help Crisis Intervention Office, 2210 North Halsted Street, Chicago, to walk Ms. Elyse Friedman to her residence at 2157 North Fremont, Chicago. On his way back to work, an unidentified assailant demanded money from the Claimant in front of 814 W. Webster, Chicago. The Claimant refused, whereupon the assailant fired once into the ground. The Claimant then fled eastbound toward Halsted Avenue. The assailant fired another shot hitting the Claimant in the back. The Claimant returned to the Metro Help Crisis Intervention Office, whereupon the Chicago Police Department was notified. The police took the Claimant to Augustana Hospital where he was hospitalized from January 15, 1974, to January 18, 1974. The Claimant has fully recovered and suffers no permanent disability.

The Claimant's pecuniary losses were as follows:

| | |
|---|---|
| Hospital | $359.00 |
| Medical | $100.00 |
| Drugs | $ 5.00 |
| Total: | $464.00 |

In addition, the Claimant lost six days of work from his job. His average monthly income for the six months preceding the crime was $1,073.00. According to Section 4 of the Act, loss of earnings is determined as follows:

. . . loss of earnings, loss of future earnings, and loss of support shall be determined on the basis of the victim's average monthly earnings for the six months immediately preceding the date of the injury or on $500.00 per month, whichever is less.

For the six days during which the Claimant missed work the Court determines that the loss, on the basis of $500.00 per month, is $98.64.

Thus the total gross losses of the Claimant is $557.64.

The Claimant received $379.50 from Blue Cross/ Blue Shield.

In determining the amount of compensation to which an applicant is entitled, Section 7(d) of the Act states that this Court:

(d) . . . shall deduct $200.00 plus the amount of benefits, payments or awards, payable under the Workmens Compensation Act, or from local governmental, state or federal funds or from any other source (except annuities, pension plans, federal social security benefits and the net proceeds of the first $25,000.00 of life insurance that would inure to the benefit of the applicant . . .).

Applying this provision we must deduct from the total pecuniary loss of $551.64, the $379.50 received from Blue Cross/Blue Shield and the $200.00 as provided in Section 7(d), leaving no amount due from the State to the Claimant.

The Claimant argues that both the $500.00 maximum for lost earnings and the $200.00 deductible provisions of the Act are unfair and the Court should consider his mental anguish and psychological problems caused by the criminal act, although the same are not accompanied by pecuniary loss.

It is, of course, basic that it is the legislature of this state that is entrusted with the responsibility of making laws and not this Court. This Court must therefore hold that under the Act no compensation in the case before us is authorized.

The claim is hereby dismissed.